# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:13-CV-625-RJC-DCK

| | |
|---|---|
| LC AMERICA, INC., | ) |
|       Plaintiff, | ) |
| v. | )    MEMORANDUM AND |
| | )    RECOMMENDATION |
| NIRVANA SPECIALTY FOODS, INC., | ) |
|       Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on "Defendant's Motion To Dismiss For Lack Of Personal Jurisdiction And For Failure To State A Claim" (Document No. 7). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be <u>granted</u>.

## I. BACKGROUND

**A. Facts**

According to the "Verified Complaint," Defendant Nirvana Specialty Foods, Inc. ("Defendant" or "Nirvana") engaged non-party Blue Tractor Foods, LLC ("Blue Tractor"), prior to September 10, 2012, "to order two container loads of flavored snack pellets from Plaintiff" LC America, Inc. ("Plaintiff" or "LC"). (Document No. 1-1, p.2). On or about September 10 and 17, 2012, Blue Tractor received invoice #108 and invoice #105 confirming the orders for the containers of pellets. (Document No. 1-1, p.3). The invoices, attached to the Complaint, indicate transactions between Le Caselle and Blue Tractor; neither Plaintiff LC, nor Defendant Nirvana, are named in either invoice. (Document No. 1-2, pp.1-4).

Two containers of snack food pellets were delivered to Blue Tractor on or about December 19, 2013, in Chagrin Falls, Ohio. (Document No. 1-1, p.3; Document No. 1-2, pp.1-5). Plaintiff contends that Blue Tractor was advised by Defendant to transfer the containers of pellets "to Defendant's facility in York, Pennsylvania." (Document No. 1-1, p.3) (citing Document No. 1-2, p.5). The containers were transferred by about January 4, 2013. (Document No. 1-1, p.3) (citing Document No. 1-2, pp.6-8).

Plaintiff contends that Defendant had received and agreed to pay the invoices on December 19, 2012. (Document No. 1-1, p.3) (citing Document No. 1-2, p.9). Plaintiff further contends that Defendant "processed, marketed, and sold at a profit the processed snack foods and has refused to pay Plaintiff the two invoices totaling Eighty Six thousand Eight Hundred Fifty Four and 17/100 Dollars ($86,854.17)." (Document No. 1-1, p.3).

**B. Procedure**

Plaintiff filed its "Complaint" (Document No. 1-1) initiating this action on October 16, 2013, in the Superior Court of Mecklenburg County, North Carolina. The Complaint notes that Plaintiff is a North Carolina corporation that is a "wholly owned subsidiary of Le Caselle s.r.l. an Italian corporation headquartered in Pontevico, Italy," and that Defendant is a New York corporation. (Document No. 1-1, p.2). Plaintiff asserts claims against Defendant for breach of contract and unjust enrichment. (Document No. 1-1). Defendant removed the case to this Court on November 14, 2013, based on the parties' diversity and the amount in controversy, pursuant to 28 U.S.C. 1332. (Document 1, pp.2-3).

"Defendant's Motion To Dismiss For Lack Of Personal Jurisdiction And For Failure To State A Claim" (Document No. 7) was filed on January 16, 2014. Following "Plaintiff's Responses to Defendant's Motion To Dismiss For Lack Of Personal Jurisdiction And Failure To

State A Claim" (Document No. 11), and "Defendant's Reply In Support Of Its Motion To Dismiss For Lack Of Personal Jurisdiction And For Failure To State A Claim" (Document No. 14), the pending motion is fully briefed. A Memorandum And Recommendation to the Honorable Robert J. Conrad, Jr. is now appropriate.

## II. STANDARD OF REVIEW

A party invoking federal court jurisdiction has the burden of establishing that personal jurisdiction exists over the defendant. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005); Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).

> When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of evidence. . . . [W]hen, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.

Combs, 886 F.2d at 676. (internal citations omitted). "Mere allegations of in personam jurisdiction are sufficient for a party to make a prima facie showing." Barclays Leasing, Inc. v. National Business Systems, Inc., 750 F.Supp. 184, 186 (W.D.N.C. 1990). The plaintiff, however, "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist." IMO Industries, Inc. v. Seim S.R.L., 3:05-CV-420-MU, 2006 WL 3780422, at *1 (W.D.N.C. December 20, 2006). "Rather, in such a case, the plaintiff must come forward with affidavits or other evidence to counter that

3

of the defendant . . . factual conflicts must be resolved in favor of the party asserting jurisdiction...." Id.

Questions of jurisdiction are answered by a two-step analysis: (1) the court must determine whether the North Carolina long-arm statute confers personal jurisdiction; and (2) the court must determine whether the exercise of that statutory power will violate the due process clause of the U.S. Constitution. Gen Latex & Chem. Corp. v. Phoenix Med. Tech., 765 F.Supp. 1246, 1248-49 (W.D.N.C. 1991). The statutory inquiry merges with the constitutional inquiry, essentially becoming one. See ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997).

There are two varieties of personal jurisdiction, general and specific. General jurisdiction requires "substantial" or "continuous and systematic" contacts or activities in the forum state and is not at issue in the instant case. Specific jurisdiction exists when a court exercises personal jurisdiction over a defendant in a suit *arising out of* or *related to* the defendant's contacts with the forum. Helicopterous Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).

Due process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state. The Fourth Circuit has "synthesized the Due Process Clause for asserting specific jurisdiction into a three-part test . . . '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" New Wellington, 416 F.3d at 294 (citing Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004).

## III. DISCUSSION

### A. Personal Jurisdiction

When a district court determines personal jurisdiction on the basis of briefs and the allegations in the complaint, without an evidentiary hearing, "the plaintiff bears the burden [of] making a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." Consulting Engineers, Corp. v. Geometric Limited, 561 F.3d 273, 278 (4th Cir. 2009) (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)); see also, Sweezy v. Specialized Bicycle Components, Inc., 3:08-CV-268-GCM, 2009 WL 382719, at *1 (W.D.N.C. Feb. 12, 2009). A federal court exercises personal jurisdiction over a defendant in the manner provided by state law. ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997); Fed.R.Civ.P. 4(k)(1)(A). "When evaluating personal jurisdiction, the trial court must engage in a two-step inquiry: first, the trial court must determine whether a basis for jurisdiction exists under the North Carolina long-arm statute, and second, if so, the trial court must determine whether the assertion of personal jurisdiction over the defendant is consistent with applicable due process standards." Brown v. Ellis, 206 N.C.App. 93, 96 (2010) (quoting Cooper v. Shealy, 140 N.C.App. 729, 734 (2000)).

#### 1. Long-Arm Statute

The North Carolina long-arm statute authorizes the exercise of jurisdiction over a defendant in twelve circumstances. N.C.Gen.Stat. § 1-75.4(1)-(12). Plaintiff contends in its response to the instant motion that Defendant is subject to personal jurisdiction pursuant to N.C. Gen. Stat. § 1-75.4 (4) and (5), although the Complaint does not specify the basis for jurisdiction or which of the provisions of the statute are applicable. (Document No. 11, p.2; Document No. 1-1).

**2. Due Process**

Assuming personal jurisdiction is authorized under the long-arm statute, a court must next consider whether there are sufficient contacts with the forum state to meet the requirements of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

    a. General Jurisdiction

"The Fourth Circuit has described the threshold level of minimum contacts required for general jurisdiction as 'significantly higher than for specific jurisdiction' and as 'very substantial, indeed.'" Sweezy, 2009 WL 382719, at *2 (quoting EASB Group, 126 F.3d at 623-24.

Defendant contends that it "has no continuous, systematic contacts with North Carolina" and therefore, Plaintiff cannot establish general jurisdiction. (Document No. 7-1, p.8). Defendant specifically argues as follows:

> . . . Nirvana has never advertised, promoted or marketed itself, directly or indirectly, in North Carolina. Nirvana has never intended to advertise or market itself in North Carolina. Nirvana has never had a joint-venture type relationship with an entity that does business regularly in North Carolina. Nirvana has never used "middlemen" or intermediaries to effectively conduct business in North Carolina. In fact, Nirvana does not know if any of its finished products are purchased or consumed in North Carolina.
>
> Nirvana has never owned or rented property in North Carolina. Nirvana has never maintained an office in North Carolina. Nirvana has never had an employee or agent based in North Carolina. With the exception of one brief trip to meet with LCA in mid-2013 to discuss purchasing product from Le Caselle directly, Nirvana has never sent an employee or agent to North Carolina to transact business. (A single unrelated trip to the forum is inadequate to confer jurisdiction.)
>
> In sum, Nirvana's contacts with North Carolina are not so substantial that "they amount to a surrogate for presence and thus render the exercise of sovereignty just." Therefore, no general jurisdiction exists.

(Document No. 7-1, pp.9-10) (internal citations omitted).

Plaintiff does not directly address Defendant's arguments regarding general jurisdiction; moreover, Plaintiff does not explicitly state whether it is arguing that there are the type of persistent and substantial contacts here that typically support general jurisdiction. (Document No. 11, pp.15-21). Rather, Plaintiff contends there are "sufficient" contacts based on internet activity, and/or Defendant's alleged contractual requirement to perform obligations in North Carolina, to support specific jurisdiction. See (Document No. 11, pp.19-20).

b. Specific Jurisdiction

Specific jurisdiction is based on the concept that a party who enjoys the privilege of conducting business in the forum state should bear the reciprocal obligation of answering to legal proceedings in that forum state. International Shoe v. Washington, 326 U.S. 310, 319 (1945). However, "to justify the exercise of personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must have been so substantial that 'they amount to a surrogate presence and thus render the sovereignty just.'" Consulting Engineers, 561 F.3d at 277-78 (quoting ESAB Group, 126 F.3d at 623). It is essential that a plaintiff show that a defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

As noted above, the Fourth Circuit has "synthesized the due process requirement for asserting specific personal jurisdiction in a three-part test in which 'we consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" Consulting

Engineers, 561 F.3d at 278 (quoting ALS Scan, Inc. v. Digital Service Consultants, Inc., 293 F.3d at 712).

Pursuant to the foregoing, the resolution of the pending motion hinges on the significance of Defendant's contacts with North Carolina and whether Plaintiff's claims arise out of activities directed at North Carolina. In its motion, and its "Affidavit" (Document No. 10), Defendant describes its contacts, or lack thereof, with North Carolina. (Document No. 7-1, pp.11-12).

First, Defendant argues that it had never even heard of Plaintiff before Plaintiff began making demands for payment for goods which Plaintiff did not produce, and never owned, sold, or otherwise contracted to provide anyone. (Document No. 7-1, p.12). Defendant concludes it could not, therefore, purposefully avail itself of the privilege of conducting activities in North Carolina. Id.

Next, Defendant argues that it "never directed anything toward North Carolina with respect to the goods that Blue Tractor decided to purchase from Italy and have delivered to Ohio." Id. Defendant's "Affidavit" contends that

> The transactions and alleged transactions in this lawsuit have no connection to North Carolina. At all. Nirvana contracted with Blue Tractor, LLC – an Ohio company with, to Nirvana's knowledge, its only facilities in Ohio – to purchase raw veggie straw and veggie chip pellets. A true and complete copy of this contract is attached hereto as Exhibit A. . . . Nirvana did not contemplate, much less intend to benefit, LCA or Le Caselle when it executed that contract. In fact, Nirvana did not know these companies existed at the time.

(Document No. 10, pp.3-4). The Affidavit also contends, contrary to assertions in the Complaint, that Defendant does not own a facility in Pennsylvania, but has only one office which is located in upstate New York. (Document No. 10, p.4).

Finally, Defendant contends that the exercise of personal jurisdiction here would be constitutionally unreasonable. (Document No. 7-1, p.12). Defendant asserts that it is a small New York company and that the burden to litigate a claim in North Carolina "is obvious." Id. Defendant further asserts that North Carolina has no interest in resolving a contractual dispute governed by Article 2 of the Ohio commercial code, and that none of the key witnesses or documentary and physical evidence are in North Carolina. Id.

In response, Plaintiff contends that Defendant has established sufficient contacts with the State of North Carolina to justify the exercise of personal jurisdiction. (Document No. 11, p.19). In support of this argument, Plaintiff identifies essentially three (3) points of contact, none of which form the basis for the lawsuit. (Document No. 11, pp.19-20).

First, Plaintiff asserts that "Defendant has marketed the sale of its water online and has entered in to contracts with residents of the State of North Carolina through the sale of said water earning substantial profits therefrom." (Document No. 11, p.19). Plaintiff suggests that Defendant's allegedly conscious choice to conduct business with residents of this state via the Internet subjects it to suit here. Id.

Second, Plaintiff argues that in addition to Internet activity, "Defendant made the conscious choice to market its product for sell in fifty-five 7-Eleven stores located in the State of North Carolina and twelve Walmart stores in the State of North Carolina." Id.

Finally, Plaintiff directs the Court's attention to a transaction in 2013, in which "Nirvana contracted with LC / Le Caselle for purchase of another shipment of snack food pellets," unrelated to the transaction underlying the lawsuit where Defendant allegedly engaged and failed to pay Blue Tractor. (Document No. 11, pp.3-4, 20). Plaintiff contends that the 2013 transaction

included payments to Plaintiff in North Carolina, as well as a meeting between representatives of Plaintiff and Defendant in North Carolina in April 2013. (Document No. 11, p.20).

In sum, Plaintiff argues that this Court should exercise personal jurisdiction based on (1) Defendant's alleged Internet activity within North Carolina; (2) alleged sale of "its product" in North Carolina; and (3) a separate business deal, unrelated to the alleged breach of contract that forms the basis of the lawsuit.

"Defendant's Reply…" (Document No. 14) effectively refutes Plaintiff's arguments. First, Defendant argues that "[a] single, unrelated purchase by Nirvana from La Caselle in Italy for shipment to Pennsylvania does not amount to 'continuous and systematic' contacts with North Carolina . . . even if payment for that shipment happened to be routed through LCA's bank in North Carolina." (Document No. 14, p.2).

Next, Defendant notes that several of Plaintiff's attachments to its response

> reference the Nirvana, Inc., incorporated in 1995 that bottles and sells spring water. They do not refer to the Nirvana Specialty Foods, Inc. incorporated in 2011 which is before this Court and sells snack foods. Nothing suggests the jurisdictional contacts attributable to one can be attributed to the other.

(Document No. 14, pp.23) (citing Document Nos. 13-4, 13-5, 13-6, 13-7, 13-8). Defendant concludes that Plaintiff has not shown anything that indicates actual sales by Nirvana Specialty Foods, Inc., in North Carolina, or an intention to target the North Carolina market specifically. (Document No. 14, p.3).

**B. Conclusion**

"[T]he Fourth Circuit has made it clear that due process requires that a defendant's contacts with the forum state be tantamount to physical presence there." Ritz Camera Centers, Inc. v. Wentling Camera Shops, Inc., et al., 982 F.Supp. 350, 353 (D.Md. 1997). Here, the

undersigned cannot find that Defendant's contacts are tantamount to a physical presence in North Carolina. Perhaps even more compelling than its limited contacts with North Carolina is Defendant's argument that specific jurisdiction fails under the second element of the test because the Complaint does not show that the claims against Plaintiff arose out of activities directed at North Carolina. All activities related to the claims in the lawsuit appear to have occurred in Ohio, Pennsylvania, and/or New York. (Document No. 1-1). To the extent Le Caselle agreed to ship two containers of snack food pellets to Ohio, there is no evidence that Plaintiff was involved in that transaction, much less that the transaction involved contacts with Plaintiff in North Carolina. Id.

Applying the appropriate test of specific jurisdiction, even if Plaintiff established that Defendant purposefully availed itself of the privilege of conducting activities in North Carolina, Plaintiff has failed to show that its claims arise out of activities directed at North Carolina. See Consulting Engineers, 561 F.3d at 278.

Construing all relevant pleadings in the light most favorable to Plaintiff, assuming credibility, and drawing the most favorable inferences for the existence of jurisdiction, the undersigned does not find that application of the Fourth Circuit's three-part test for specific jurisdiction supports Plaintiff's position. See Consulting Engineers, 561 F.3d at 278 (quoting ALS Scan, 293 F.3d at 712). Plaintiff has not met its burden of showing by a preponderance of the evidence that Defendant purposefully availed itself of the privilege of conducting activities in this State, that its claims arise out of activities directed at North Carolina, or that the exercise of personal jurisdiction would be constitutionally reasonable. Moreover, the undersigned is not persuaded that Defendant has had the more demanding, "continuous and systematic" contacts with North Carolina to establish general jurisdiction.

Based on the foregoing, the undersigned concludes that personal jurisdiction over Defendant is absent, and will respectfully recommend that the Defendant's motion to dismiss be granted. The undersigned finds that Defendant's arguments pursuant to Fed.R.Civ.P. 12(b)(2) are more than sufficient to support a recommendation of dismissal, and will therefore decline to address Defendant's 12(b)(6) arguments.

## IV.  RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendant's Motion To Dismiss For Lack Of Personal Jurisdiction And For Failure To State A Claim" (Document No. 7) be **GRANTED**.

## V.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: April 23, 2014

David C. Keesler
United States Magistrate Judge